UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BARBARA WINGET | CIVIL ACTION |
| VERSUS | NO. 09-0229 |
| CORPORATE GREEN, LLC, a<br>Louisiana Limited Liability Company | SECTION "K"(4) |

## ORDER AND OPINION

Before the Court are the "Motion for an Award of Liquidated Damages" filed on behalf of Barbara Winget (Doc. 47) and "Plaintiff's Motion and Memorandum in Support of Its Request for an Award of Attorney's Fees and Costs." (Doc. 49). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies the motion for liquidated damages, grants the motion for attorneys fees and costs, and orders defendant Corporate Green, LLC to pay plaintiff Barbara Winget attorneys fees and costs as set forth hereinafter.

BACKGROUND

From July, 2006 until December 24, 2009 Barbara Winget worked for Corporate Green, LLC ("Corporate Green") a landscaping business in Baton Rouge, Louisiana. Initially Ms. Winget worked in the Corporate Green office and received overtime pay for any hours over forty (40) hours per week. However, beginning in approximately mid-July, 2007, Ms. Winget began working on a detail crew. As a member of the detail crew, Ms. Winget traveled to the property of various Corporate Green customers and planted bushes and flowers, as well as mulched and cleaned flower beds.

Corporate Green did not pay overtime to detail crew employees who worked more than forty (40) hours per week. Rather, the company paid those employees based on "budgeted hours," which

Chris Casselberry, the Chief Financial Officer of Corporate Green, described as follows: "[e]very one of our jobs have [sic] a budgeted time that we allow people to work on it. That's what we paid you. If you went over, or if you went under, that's what you got paid." Doc. 15-3, Depo. of Chris Casselberry, p. 23. Mr. Casselberry also stated that in determining the budgeted hours "a computer form" and "historical facts of what our crews normally do that job in" were relied upon and that the budgeted time was "a high estimation . . . All our crews always did it under those hours. They always received a bonus." *Id.* In describing the bonus Mr. Casselberry stated "let's say you worked ten hours, but the budgeted time was 12. You got paid for 12 but you only worked ten. All of our crews historical [sic] got bonus hours." Doc. 15-3, Depo. of Chris Casselberry, p. 24. Additionally, he stated "that's why we gave them extra, because all the people we talked to, that's how we compensated for overtime actually, tell you the truth. Okay. They are earning more than they would have on straight time plus overtime." *Id*. at p. 27. Corporate Green also paid members of the detail crew budgeted hours for travel for driving from one job to another, and paid detail crew workers $8.00 for a weekly employee meeting regardless of the length of the meeting.

In 2007 and 2008 Ms. Winget concluded that Corporate Green's pay system violated the Fair Labor Standards Act, 29 U.S.C. §201 et seq. (FLSA). She told Mr. Casselberry and two of her supervisors, more than once, that the pay system violated the FLSA. Ms. Winget provided Mr. Casselberry with a document from the internet, identified as "Fact Sheet #23: Overtime Pay Requirements of the FLSA," published by the U.S. Department of Labor. Doc. 47-1, Ex. A.

In 2009 Barbara Winget filed suit against Corporate Green alleging that it violated the FLSA by failing to pay her overtime for her work in excess of forty (40) hours per week. Also in 2009, the Department of Labor audited Corporate Green with respect to the failure to pay overtime and

ordered Corporate Green to make overtime payments to a number of employees, including a payment of $1,089.00 to Ms. Winget.

Prior to trial, the parties resolved the matter of actual damages stipulating that Ms. Winget was owed $1,800.00 in actual damages. The parties further agreed to have the Court resolve, on memoranda, the issues of plaintiff's entitlement to liquidated damages and attorneys fees on memoranda.

LAW AND ANALYSIS

A. Liquidated Damages

"[A]n employer who violates the FLSA is liable for the unpaid overtime compensation 'and in an additional amount as liquidated damages.'" *Martinez v. Food City, Inc.*, 658 F.2d 369, 376 (5th Cir. 1981), quoting 29 U.S.C. §216(b). However, the FSLA also provides that:

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FSLA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [Section 16 of the FLSA].

29 U.S.C. §260.

Plaintiff does not dispute that Corporate Green had an attorney review the "budgeted hours" pay policy and that the attorney advised Mr. Casselberry that the pay plan was "legal." Doc. 13-1, Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment, No. 19, 20. It is also undisputed that the attorney's approval for Corporate Green's pay plan came several years prior to Ms. Winget's complaint to Corporate Green about its failure to pay overtime.

Section 260 of the FLSA :

> impose[s] upon the employer who would escape the payment of

> liquidated damages a plain and substantial burden of persuading the
> court by proof that his failure to obey the statute was both in good
> faith and predicated upon such reasonable grounds that it would be
> unfair to impose upon him more than a compensatory verdict.

*Barcelona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979). "[G]ood faith requires some duty to investigate potential liability under the FLSA." *Id.* at 469.

Corporate Green has satisfied its burden of persuading the Court that its failure to comply with the FLSA was in good faith and based on reasonable grounds. Before implementing the "budgeted hours" pay plan Corporate Green had the plan reviewed by a lawyer, made changes to the plan based on advice received from that lawyer, resubmitted the plan to the lawyer, and was ultimately advised by counsel that the plan complied with the FSLA. Plaintiff concedes that "reliance upon the advice of an attorney can be sufficient for denial or limitation of liquidated damages." Doc. 47, p.3. However, relying on *Richard v. Marriott Corporation*, 549 F.2d 303 (4th Cir. 1977), plaintiff contends that Corporate Green's failure to have the pay policy reviewed again by an attorney after she complained to Corporate Green's supervisors about the failure to pay overtime and presented Mr. Casselberry with "written information from the United States Department of Labor's website on why the method of payment violated the law," demonstrates that Corporate Green did not act in good faith. The Court disagrees. *Richard v. Marriott Corporation* can be readily distinguished. There, the appellate court held that an employer whose pay practices violated the FLSA did not act in good faith when it ignored a widely circulated opinion letter from the Department of Labor, Wage and Hour Administration "which repudiated earlier opinions and gave notice to Marriott and other employers that tips had to be retained by the employees, that agreements remitting tips to the employer were henceforth invalid, and that the employer had to pay regardless of the amount of times, at lease one-half of the minimum wage." *Id.* at 304-305. The

Fourth Circuit concluded that the administrator's opinion letter "put the defendant on notice that it should look to its payment practices . . .." *Id.* at 306. Here however, Ms. Winget provided Corporate Green with information which the Department of Labor itself described as "general information concerning the application of the overtime pay provisions of the FLSA." Doc. 47-1. That document does not alert the reader to any changes in the law or to a new interpretation of the law's requirements, other than with respect to the actual amount of the minimum wage. Thus, unlike the employer in *Richard,* Corporate Green did not simply ignore a communication designed to alert employers to a change in the interpretation of the law.

Good faith does not require an employer to seek a new legal opinion each time an employee challenges a pay policy or provides the employer with general information from the Department of Labor, where the information does not indicate that there has been a change in the law or a change in the way in which the Department of Labor interprets the law. Because Corporate Green has satisfied its burden of establishing that its failure to obey the FLSA was in good faith and based upon reasonable grounds, the Court denies plaintiff's request for liquidated damages.

B. Attorneys Fees and Costs

The district judge "may award attorney's fees to a prevailing plaintiff" under the FLSA. *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006), citing 29 U.S.C. §216(b). Based on *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 432 U.S. 598, 600, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) defendant asserts that plaintiff is not entitled to an award of attorney's fees because the Court has not entered a judgment in favor of plaintiff. In *Buckhannon* the Supreme Court stated that based on its prior cases, a "'prevailing party' is one who has been awarded some relief by the court." *Id* at 601, 121 S.Ct.

at 1839. However, the Supreme Court also noted that:

> In addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees. Although a consent degree does not always include an admission of liability by the defendants, it nonetheless is a court-ordered chang[e] [in] the legal relationship between [the plaintiff] and the defendant.

*Id.* at 605, 121 S.Ct. at 1840 (internal quotation and citation omitted).

The parties have stipulated that the Court's order granting, in part, plaintiff's motion for summary judgment "render[ed] Defendant liable for unpaid overtime" and that plaintiff "was owed $1800 in Actual Damages." Doc. 45. Additionally, the parties stipulated that "the only issues remaining are 1) whether Plaintiff is entitled to Liquidated Damages and 2) the amount of attorney's fees and costs due to Plaintiff, in accordance with the law." *Id.* Implicit in the stipulation that the Court would determine "the amount of attorney's fees and costs due to Plaintiff, in accordance with the law" is an acknowledgment that plaintiff is entitled to an award of attorneys fees and costs. Moreover, the stipulations are sufficient for the Court to enter a consent judgment establishing plaintiff as a prevailing party in this litigation should the defendant require the entry of a consent judgment to establish plaintiff's status as a prevailing party. Therefore, the Court concludes that plaintiff is entitled to an award of attorneys fees.

Turning to the issue of the amount of attorneys fees to which plaintiff is entitled, it is well established that in calculating an award of attorneys fees, the Court must first calculate the "lodestar." *Forbush v. J.C. Penny Co.*, 98 F.3d 817, 821 (5th Cir. 1996). "Multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work" provides the lodestar amount. *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d at 799. "[B]illing judgment" is an important component in fee setting. *Hensley v. Eckerhart*, 461 U.S.424,

434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Therefore, the district court should exclude from the initial fee calculation any time that was not "reasonably expended." *Id.,* 103 S.Ct. at 1939. Moreover, the district court has discretion in determining the amount of a fee award. *Id.* at 438, 103 S.Ct. at 1941.

Once the district court determines the lodestar, "[t]he district court may then adjust the lodestar upward or downward depending on the respective weights of the twelve facts set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)." *Forbush v. J.C. Penney Co.*, 98 F.3d at 821. The *Johnson* factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to the acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717-719.

1. Calculating the Lodestar

Plaintiff seeks attorneys fees totaling $35,952.50 for 134.40 hours of work performed by her attorney Carlos Leach and two paralegals. That sum sought is based on an hourly rate of $300.00 for her attorney and an hourly rate of $95.00 for each of the paralegals. Based on the time records submitted by plaintiff in support of her motion, the Court has calculated that Ms. Winget's attorney billed 112.40 hours to the file and that the paralegals billed a total of 21.4 hours. The Court's calculation indicates a total of 133.80 hours, not the 134.60 hours alleged by plaintiff.

a) Billing Judgment

Those seeking attorney's fees are "charged with the burden of showing the reasonableness of the hours they billed and, accordingly, are charged with proving that they exercised billing judgment." *Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d 761, 770 (5th Cir. 1996). Attorneys exercise billing judgment by not charging for time that is unproductive, excessive, or duplicative when seeking a fee award. *Id.* Establishing the exercise of billing judgment "requires documentation of the hours charged and of the hours written off as unproductive, excessive or redundant." *Saizan v. Delta Concrete Products Co., Inc,* 448 F.3d at 799. "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d at 770.

Plaintiff has not carried her burden of demonstrating the exercise of billing judgment. The documents provided by plaintiff in support of the motion for fees "did not document both the hours charged and the hours written off." In his affidavit in support of the motion for attorneys fees, Carlos Leach does not mention any exercise of billing judgment other than to state that "[t]he time recorded was all reasonably and necessarily incurred in the pursuit of the case[]" and that "Morgan & Morgan has expended attorney time and paralegal time as listed in the attached time sheets in the prosecution of this matter." Doc. 49, Ex. A. Those statements, coupled with the absence of any documentation that hours were written off, support a conclusion that plaintiff's counsel did not write off any hours in the exercise of billing judgment. See *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002); see also *Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d at 769 (5th Cir. 1996) ("there is no record of any such billing judgment, as the plaintiffs allege that

8

they wrote off hours before recording them."); *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off."); *Leroy v. City of Houston*, 831 F.2d 576, 585 n. 15 (5th Cir.1987) ("[T]he billing records are completely devoid of any hours written off.").

Defendant asserts that plaintiff's counsel exercised poor billing judgment by failing to write off certain time as excessive or unproductive. Specifically, defendant contends that the following entries on the billing record demonstrate poor billing judgment:

- 3.2 hours ($960.00) billed for jury instructions taken "directly from the Fifth Circuit pattern jury instructions;"
- 4.2 hours ($1,260.00) billed on a motion in limine to exclude defendant's exhibit 8 and one of defendant's witnesses, a motion which defendant did not oppose
- 21 hours ($6,300.00) billed on a motion for partial summary judgment and statement of undisputed facts as well as 7.10 hour ($2,130.00) billed for reviewing defendant's motion for summary judgment, preparing an opposition to that motion, and preparing a statement of disputed facts;
- 3.6 hours ($960.00) preparing deposition indexes; and
- 5.2 hours ($1,560.00) for preparation of the memorandum in support of the motion for attorney's fees.

The Court agrees that the hours billed in connection with plaintiff's motion for partial summary judgment and the opposition to defendant's motion for summary judgment and the motion for attorneys fees are excessive considering the routine nature of this FLSA claim and plaintiff's counsel's stated familiarity with and expertise in handling FLSA claims. Additionally, the Court deems excessive the 5 hours billed by plaintiff's counsel on August 15, 2010 for "Review File re:all pleadings, motions, discovery responses re: prepare for trial," "Review Defendant's and Plaintiff's Motions for Summary Judgment Re: prepare for trial," and "Review File re: prepare order of presentation re: exhibits/witnesses."

9

The Court also agrees that plaintiff exercised poor billing judgment by billing 3.2 hours of attorney time for preparing jury instructions which modeled the pattern instructions and 3.6 hours of attorney time for preparing indexes for depositions. This work could have been capably performed, far more economically, by a paralegal. Furthermore, the Court concurs that billing 4.2 hours of attorney time on an unopposed motion in limine was excessive and unproductive. It is reasonable to conclude that defendant's lack of opposition to the motion in limine could have been determined in a telephone conversation with defense counsel. In the exercise of billing judgment, the time billed on the motion in limine should have been written off.

The Court also notes that there was duplicative billing of time. On August 25, 2010 a paralegal billed .80 hours for "Preparation of draft Motion for Liquidated Damages." Doc. 49. Ex. A-1. The pending "Motion for an Award of Liquidated Damages" is identical to that portion of plaintiff's previously filed motion for summary judgment addressing the issue of liquidated damages.

"The proper remedy for omitting evidence of billing judgment does not include a denial of fees, but rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Saizan v. Delta Concrete Products, Co., Inc.*, 448 F.3d at 799. After reviewing the "Time Sheet" submitted by plaintiff, the Court concludes that a reduction of 35% is appropriate for plaintiff's failure to exercise billing judgment with respect to the hours billed by counsel. Following that reduction, the lodestar will include 73.06 hours billed by an attorney.

Additionally, the Court further concludes that plaintiff exercised poor judgment with respect to the billing of paralegal time. A party seeking fees may recover attorneys fees for work performed by a paralegal "to the extent that the work is legal rather than clerical." *Johnson v. Big Lots Stores*,

*Inc.,* 639 F.Supp. 2d 696, 705 (E.D. La. 2009), citing *Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001). Review of the time sheets indicates multiple billings for leaving voice mail messages, telephone conversations with the client concerning traveling expenses for trial and the location of the trial, and the sending of emails to opposing counsel concerning what appear to be administrative matters, such as forwarding documents to opposing counsel and the scheduling depositions and a settlement conference. These billings are for work that is administrative and clerical, as opposed to legal, and fees for such tasks may not be recovered. Because such tasks comprise approximately 60% of the paralegal hours billed, the Court reduces the requested paralegal hours by 60%. Thus, the lodestar calculation will include 8.5 hours of paralegal time.

The next step in determining the lodestar amount is to set a reasonable hourly rate for counsel and the paralegals. *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993). "To determine reasonable rates, a court considers the attorney's regular rates as well as prevailing rates." *Louisiana Power & Light v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).

> When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable. When the requested rate of compensation exceeds the attorney's usual charge but remains within the customary range in the community, the district court should consider whether the requested rate is reasonable.

*Id.*

Plaintiff's counsel, who has been admitted to practice law for approximately 7 years at the time be began his representation in this case, seeks an hourly rate of $300.00 per hour citing a number of cases from various divisions of the United States District Court, Middle District of Florida awarding him $250.00 or $300.00 per hour. Those cases, however, do not establish the

prevailing rate for the Middle District of Louisiana, the district in which plaintiff litigated this suits. Nor has plaintiff submitted any affidavits of attorneys practicing in the Middle District of Louisiana to establish the prevailing rates for attorneys handling FLSA suits in this district. However, a district court "is itself an expert" on the issue of fees and "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value." *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940). Having reviewed the cases cited by plaintiff in support of an award of $300.00 per hour, the hourly rate awarded to plaintiff's counsel in cases in the Middle District of Florida, and the Court's familiarity with the local legal market, the Court concludes that an hourly rate of $250.00 per hour is reasonable compensation for an attorney with plaintiff's counsel's experience handling this type of litigation. Additionally, the Court concludes that the $95.00 hourly rate for paralegal work requested by plaintiff constitutes reasonable compensation. Based on the foregoing analysis, the appropriate lodestar is $19,078.20 (73.06 hours of attorney time at $250.00 per hour and 8.56 hours of paralegal time at $95.00 per hour).

### 2. *Johnson* Factors

After determining the appropriate lodestar amount, the court may increase or decrease that amount based on the various facts set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717-719. "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan v. Delta Concrete Products Company, Inc.*, 448 F.3d at 800.

In *City of Burlington v. Dague*, 505 U.S. 557, 566-67, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), the Supreme Court barred consideration of the *Johnson* factor pertaining to whether the fee

was fixed or contingent. No adjustment of the lodestar is necessary based on the time limitations imposed by the client or the circumstances, the nature and length of the professional relationship with the client, the preclusion of other employment by the attorney due to the acceptance of the case or the "undesirability" of the case.

The Fifth Circuit has noted that "special heed" should be given to the following *Johnson* factors: the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Saizan v. Delta Concrete Products Company, Inc.*, 448 F.3d at 800. In calculating the lodestar, the Court considered the customary fee, the time and labor involved, the novelty and difficulty of the questions, the skill requisite to perform the legal service properly, the experience of counsel, and awards in similar cases.

Defendant urges that the lodestar figure should be reduced because plaintiff's counsel has "been reprimanded by a Florida court for failing to comply with court scheduling orders related to their high-volume overtime suit practices" and has been the recipient of 46 "show cause" orders in the Middle District of Florida with respect to wage-and-hour suits. Doc. 50, p. 8-9. Because those actions in the Middle District of Florida did not impact this litigation, the Court declines to reduce the lodestar as urged by defendant.

However, the lodestar must be reduced in view of the amount involved and the result obtained by plaintiff's counsel. The parties stipulated that plaintiff will recover $1,800.00 in actual damages; however, plaintiff did not prevail on her claim of liquidated damages. Thus, plaintiff's success relative to the relief that she sought, with respect to both her claim for actual damages and liquidated damages was limited. Additionally, in reducing the lodestar calculation to account for plaintiff's failure to exercise billing judgment, the Court did not eliminate all of the hours billed by

13

plaintiff's counsel in connection with the claim for liquidated damages because at the time plaintiff the motion for fees, the motion for liquidated damages was pending. However, it is now appropriate to reduce the lodestar to account for plaintiff's limited success and her failure to prevail on the claim for liquidated damages.

As previously calculated, the lodestar amount is almost ten times the amount to be obtained by plaintiff. There is no *per se* proportionality rule between the award of attorney's fees and the damages awarded to plaintiff. *Saizan v. Delta Concrete Products Co., Inc.* 448 F.3d at 802. However, that ratio of approximately 10:1 is too disproportionate to be allowed to stand. See *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (attorney's fee award over six and one-half times the amount of damages awarded "simply too large to all the fee award to stand"). Given the amount involved and the limited success of the plaintiff, a 25% downward adjustment of the lodestar is appropriate, resulting in an award of attorneys fees of $14,038.65. Accordingly,

**IT IS ORDERED** that plaintiff's "Motion for an Award of Liquidated Damages" (Doc. 47) is DENIED;

**IT IS FURTHER ORDERED** that plaintiff's motion for attorney's fees is GRANTED and plaintiff is awarded $14,038.65 in attorney's fees;

**IT IS FURTHER ORDERED** that the proper amount of costs to be awarded shall be determined by the Clerk of Court pursuant to L.R. 54.

New Orleans, Louisiana, this 31st day of May 2011.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE